**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of John Miller and      }
Maureen Sheedy      }
     }    Docket No. 57-4-97 Vtec
     }
     }

Decision and Order

Appellants John Miller and Maureen Sheedy appealed from a decision of the Planning Commission of the City of Montpelier granting site plan approval for parking and landscaping on the Meadow Mart property, including former 282 Elm Street lot, after the site plan appeal was remanded by the Vermont Supreme Court. Appellants are represented by Steven P. Robinson, Esq.; Appellee-Applicant Terrence Shannon, d/b/a Meadow Mart, is represented by Robert Halpert, Esq.; the City of Montpelier is represented by Joseph McLean, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties and a second site visit, by agreement of the parties in April 2001, to view the area proposed by Appellants as an alternative for the storage of accumulated plowed snow, after the snow had melted enough in the spring of 2001 to have access to that area. Upon consideration of the evidence, the site visits, and the oral arguments of the parties on the record, the Court finds and concludes as follows.

Appellee-Applicant Terrence Shannon (the Applicant) is the sole proprietor of and operates the Meadow Mart convenience store, located on Elm Street in the High Density Residential (HDR) zoning district of the City of Montpelier. Previous litigation granted conditional use approval of the addition of the neighboring lot, formerly used for a residence, for parking associated with the Meadow Mart. The present appeal addresses site plan approval for the project on the merged lot. The proposed site plan as shown in Exhibit 101, incorporates the changes in the originally-proposed site plan imposed by the Planning Commission in its March 21, 1997 decision.

Appellants John Miller and Maureen Sheedy own the lots at 7 Vine Street and 9 Vine Street. Each lot contains a house used as a residence. The residence at 7 Vine Street is preexisting and nonconforming as to sideline setback, so that the house is located very close to the lot line adjacent to the rear or north[1] line of Applicant's property. Activities on the Applicant's property are visible and audible from Appellants' property.

The expansion and reconfiguration of the parking associated with the store onto the former 282 Elm Street lot allowed not only the additional customer parking, but also allowed additional on-site maneuvering room for box vans and tractor-trailer trucks making deliveries to the site. As the site has been functioning after the changes to the parking design, trucks make deliveries to the side door of the business either by backing in or driving in frontwards, depending entirely on the side of the vehicle where its delivery door is located. All the proposed landscaping has been installed and fertilized to enhance growth. The parking lot has been paved.

Truck deliveries to the side door of the business are closer to the 7 Vine Street house than is the general traffic on Elm Street, and can be heard from that house during the quieter time of the evenings and nighttime, while truck deliveries to the front of the store do not have any greater effect on the 7 Vine Street house than does the general traffic on Elm Street. Appellee-Applicant proposes to accept a condition limiting side door truck deliveries to between the hours of 7 a.m. and 6 p.m., and requiring truck drivers to shut off the engines of those trucks during such side

door deliveries. As of the time of trial, the earliest actual truck delivery to the side door occurred at approximately 8:30 a.m. and the latest occurred at approximately 4 p.m.

Appellants claim that the site plan as proposed by Appellee-Applicant does not maximize the screening of the 7 Vine Street house from activities on Appellee-Applicant= s property. Although the arborvitae hedge was extended along the portion of Appellee-Applicant= s rear lot line directly next to the porch and living room windows of 7 Vine Street, that hedge even when fully grown will not fully block the view of Appellee-Applicant= s parking lot from the upstairs front bedroom windows of the 7 Vine Street house. When fully grown, the arborvitae hedge placed in the interior of Appellee-Applicant= s back yard, together with the existing crabapple in the center of Appellee-Applicant= s rear lot line, will effectively screen the view of Appellee-Applicant= s parking lot from the downstairs dining room and kitchen windows of the 7 Vine Street house. However, the crabapple is a deciduous tree that is not dense, even in summer, and so does not fully block the view of Appellee-Applicant= s parking lot from the upstairs back windows of the 7 Vine Street house. The ordinance does not require that the view of non-residential activities on Appellee-Applicant= s lot be entirely blocked from view; rather it requires reasonable screening to protect the residential use.

Appellants propose that the arborvitae hedge placed in the interior of Appellee-Applicant= s back yard be extended by additional plantings to meet the existing arborvitae hedge running along Appellee-Applicant= s westerly property line, and that the area to be used for snow storage be expanded behind the building to the northeast corner[2] of Appellee-Applicant=s property. Appellants do not propose an alternative location for a garbage dumpster on Appellee-Applicant= s property.

A garbage dumpster is located at the rear of the paved area near the northwest corner of the building. The truck that collects garbage from the dumpster is a front end loader longer than a standard garbage truck and wider than the dumpster itself. There is no other practicable location for the dumpster on the lot. It cannot be placed in the northeast corner of the lot because the truck would not be able to get to it, either down the narrow right-of-way on the northeasterly side of the property or behind the building between the building and the hedge. It cannot be placed near the front corner of the building where the ice machine is now located, because the truck would stick out into the Elm Street right-of-way while collecting garbage. It cannot be placed in the paved area in front of the building because it would impede the access and circulation of traffic onto the lot in front of the building.

Because of the necessary placement of the garbage dumpster, there is insufficient room to the north of the parking lot for the storage of an accumulation of snow in a heavy snowstorm, unless the area of the back yard to the west of the central arborvitae hedge is allowed to be used for snow storage. Even if the dumpster were to be moved during plowing events, it would be difficult for a snow plow to maneuver in the tight area behind the building to deposit snow into the northeast corner of the property and then to extract itself successfully. This fact is true regardless of the existence of the concrete slab on the ground behind the building, left in place when the rear storage addition was removed. That is, if there were enough room for a snow plow to move snow into the northeast corner of the property, the court could require the addition of fill or the removal of the concrete slab as necessary to allow the passage of such equipment behind the building.

To be approved, a site plan must meet the criteria in Section 507(F) of the Zoning Regulations: the Planning Commission, and hence this Court, may impose appropriate conditions and safeguards with respect to the adequacy of traffic access; circulation; parking; landscaping and screening; and provisions to protect the utilization of renewable energy resources. The issue of utilization of renewable energy resources has not been raised by the parties in this particular appeal. As designed in Exhibit 101, with the dumpster added, with the westerly portion of the back yard proposed for snow dumping, and with the area directly behind the building no longer proposed for snow dumping, the site plan allows adequate access for traffic onto and from the

site, so long as the sidewalk area is properly marked by painted cross-hatching on the pavement. The site plan as now proposed allows for adequate on-site circulation, but to maximize the protection of the 7 Vine Street property, the hours of deliveries to the side door must be restricted to between the hours of 7 a.m. and 6 p.m., Monday through Friday, and the engines of vehicles making deliveries to the side door must be turned off during such deliveries. The site plan as now proposed allows for adequate parking, as long as the snow is removed promptly from all of the parking and on-site circulation area and parking spaces are marked on the pavement for the guidance of drivers. The site plan as now proposed allows for adequate landscaping and screening, and maximizes the protection of the neighboring residential property without depriving the landowner of the reasonable use of any potion of his property.

Based on the findings and conclusions, it is hereby ORDERED and ADJUDGED that the Applicant's application for site plan approval of expansion of the parking and delivery area for the Meadow Mart onto the portion of the merged 282-284 Elm Street lot which was formerly the 282 Elm Street lot is GRANTED as shown on Exhibit 101, with the following additional appropriate safeguards and conditions as provided in Section 507(F).

1. Appellee-Applicant shall paint the required striping on the pavement to designate the sidewalk area, and shall maintain and renew that painting as necessary to retain its visibility.

2. Appellee-Applicant shall mark on the pavement parking spaces 1 through 7 for the guidance of drivers seeking to park in those spaces, and shall maintain and renew that painting as necessary to retain its visibility.

3. Deliveries to the side door are restricted to between the hours of 7 a.m. to 6 p.m., Monday through Friday; Appellee-Applicant shall instruct drivers to turn off delivery vehicles= engines during deliveries and shall enforce compliance with this condition.

4. Appellee-Applicant shall file a revised copy of the site plan for the records of the Planning Commission, showing the revised snow storage areas and dumpster location as granted in this decision.

5. Authority is reserved to the Planning Commission to review the landscaping in the next growing season to determine its adequacy for the purposes for which it was required to be planted.

Dated at Barre, Vermont, this 8th day of January, 2002.


_____
Merideth Wright
Environmental Judge

---

**Footnotes**

[1.] Although the local residents may be used to thinking of Elm Street as heading in a north-south direction, and may have referred in testimony to directions under that assumption, Exhibit 101 shows the actual direction of magnetic north and is used for that purpose in this decision.

2. Appellee-Applicant testified to an agreement with the easterly neighbor whereby the neighbor uses that area for snow storage from the neighbor's own property. If that area were suitable for and accessible from Appellee-Applicant's property to be used for snow storage from Appellee-Applicant's property, such an agreement would not prevent this Court from ordering that it instead be used for Appellee-Applicant's snow storage.